UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                                                        )    Crim. No. 13 - 119 -06 (ABJ)<br>)<br>)<br>DANIEL BYNUM                              )<br>_____ ) | |

**UNOPPOSED MOTION TO MODIFY CONDITIONS OF SUPERVISED RELEASE
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COMES NOW the defendant, through undersigned counsel, and respectfully moves this Court to modify a condition of supervised release. Specifically, defendant requests that the Court substitute six (6) months of home detention for the remaining period of community confinement. In support of this motion defendant states as follows:

1. On or about April 4, 2014 Mr. Bynum was sentenced to Time Served, followed by 36 months of supervised release. One of the conditions of supervised release requires Mr. Bynum to reside in, and observe the rules of a community correctional center, for a period of twelve (12) months. The sentence recognized Mr. Bynum's exemplary compliance during the pendency of the case, and was intended to assure that he would not lose the job he had obtained and maintained for nearly a year prior to sentencing.

2. Aware of the many potential difficulties that can arise during a halfway house placement, government counsel recommended that the Court schedule a status hearing in approximately six (6) months. Accordingly, the Court scheduled a "re-entry progress hearing" on October 9, 2014.

2. Unexpectedly, it took nearly six (6) months for Mr. Bynum to be referred to the Hope Village residential re-entry facility. Thus, Mr. Bynum was designated to report to the halfway house on September 29, 2014 - ten days before the scheduled progress hearing. Although the Probation Office worked to assure a smooth transition from home detention to halfway house confinement, it was far from seamless. Mr. Bynum had, and continues to have, a number of problems that are beginning to adversely affect his employment.[1] Therefore, Mr. Bynum is respectfully requesting that the Court modify his conditions to permit home confinement as a substitute for the community confinement because he does not think that he can both maintain his employment and comply with the halfway house rules.

3. As the Court has been told, Mr. Bynum has now maintained his employment for about 17 months. Most of the logistical problems he is having arise because he continues to work a night shift. The night shift is making it very difficult, if not impossible, for him to comply with all the halfway house rules and to get sufficient sleep. At the same time, the enforcement of some of the halfway house rules is beginning to seriously affect his performance at work.

4. Mr. Bynum's job requires him to work a 2:00 A.M. until 8:00 A.M. shift. However, Mr. Bynum can not leave work and return to the halfway house until he completes his work responsibilities, and is relieved by the person working the morning shift. As a result, his normal

---

[1] At the time of the re-entry progress hearing, Mr. Bynum and undersigned counsel recognized that there were a number of problems, but we both remained optimistic that everything would be resolved and that he would be able to remain at the halfway house without jeopardizing his job. Counsel advised the Court that there were a number of problems, and requested a further status hearing in the matter. Unfortunately, as discussed below, counsel is no longer optimistic that Mr. Bynum can remain at the halfway house without jeopardizing his job.

schedule has generally been from 2:00 A.M. until about 9:00 A.M., even though it is officially listed as a 2:00 A.M. to 8:00 A.M. shift by his employer, and therefore by the halfway house. The difficulties and demands of the halfway house continue to conflict with the demands of his job, and it appears that the conflicts will soon put his job in jeopardy.[2]

    5. First, because Mr. Bynum has to get to work at 2:00 A.M., his probation officer made a request on his behalf that he be permitted to use his automobile, so that he would not have to rely on taking public transportation in potentially dangerous areas at that time of night. Mr. Bynum was led to believe that the request would be approved. However, as of the filing of this motion, Mr. Bynum is still taking public transportation to and from work, and the use of his automobile for work has not been approved.

    6. Second, even though the Court waived costs of community confinement, the halfway house demanded payment of the 25% fee they assessed. Mr. Bynum's was advised that he could not go to work until he paid the fee. Mr. Bynum had to make immediate arrangements to borrow money to pay the fee so he could go to work that night. Thereafter, his probation officer was able to convince the halfway house that the costs had been waived. If Mr. Bynum had not paid the fee (which had been waived by the Court), he would have been forced to miss work, which would have adversely affected his job.

    7. Third, Mr. Bynum had been told that if he has stay at work past 8:00 A.M. he should have the supervisor at work contact the halfway house and inform them that he had to work late. As long as that is done, he would not be considered late. He followed that procedure over the

---

[2] Each time Mr. Bynum is confronted about an issue at the halfway house, he is told that if he does not comply with the directive (whether the halfway house directive is correct or not), he will not be allowed to go to work, or he may be terminated from the halfway house.

past month. However, last week he was told that the halfway house will no longer follow that procedure, and he will be considered late if he returns after working past 8:00 A.M. As discussed above, Mr. Bynum is expected to stay at work until he finishes his tasks, and definitely until he is relieved by the person working the next shift, which is often between 8:00 and 9:00 A.M.. If he were to leave at 8:00 A.M. without completing those tasks and before his relief person arrived, he will definitely be sanctioned or fired by his employer. Nevertheless, he faces the threat of sanctions by the halfway house if he stays at work past 8:00 A.M. when so required by his job.

8. Fourth, he was recently told that he is is non-compliant with the halfway house conditions because he has not been participating in the Life Skills classes, which are offered at the halfway house from 10:00 A.M. to 11:00 A.M. [3] Initially, when the issue was addressed with Mr. Bynum, he was told that it should not be a problem if he is unable to make those classes because he is already employed and is working nights. Mr. Bynum asked if he could attend the Life Skills classes on his day(s) off, but he is not sure if that will be acceptable to the halfway house officials. As with the other rules, the threatened sanction if they decide to enforce the rule will be keeping him from going to work, and possibly termination from the halfway house.

9. Finally, counsel would note that the halfway house is a very noisy place during the

---

[3] Counsel would note that it has been extremely difficult, if not impossible, for Mr. Bynum to participate in the classes. Some days he can not get back to the halfway house from work in time to participate in the class. In addition, he generally needs to get to sleep as soon as he gets there because it becomes impossible to get sleep later in the day when it is very noisy.
   Counsel would further note that it appears that these classes, and many of the rules and other requirements at the halfway house, are intended to assist individuals who are coming from federal prison, rather than individuals, like Mr. Bynum, who are employed and are coming directly from the community to the halfway house.

day, and that it is proving very difficult for Mr. Bynum to get sleep during the day. The halfway house is not conducive to sleeping during the day because of the level of activity and noise during daytime hours. Even if he is able to get to sleep as soon as he returns to the halfway house, he is not getting the sleep he needs to function properly. As a result, he is becoming increasingly more sleep deprived, and it is adversely affecting the quality of his work, and his ability to complete his tasks during his shift. He is increasingly concerned that he may get fired if his job performance suffers.

10. Mr. Bynum greatly appreciates the fact that the Court fashioned a sentence which enabled him to keep his job. He knew it would be difficult in the halfway house, and he has been committed to overcoming the obstacles and working through any issues that arise. As expected, problems and obstacles have arisen since his first day at the halfway house. As each obstacle has presented itself, Mr. Bynum has worked with his counsel, probation officer, and the halfway house staff to make things work. Nevertheless, as each problem is resolved, a new one seems to arise. Counsel now believes that Mr. Bynum will not be able to successfully maintain his night-time job if he remains in the halfway house. It seems that it is only a matter of time before the halfway house determines that he is non-compliant, whether the non-compliance is willful or not, and either prevents him from going to work or simply terminates him from the halfway house. Thus counsel believes it makes sense to modify the conditions of supervision, substituting home confinement for community confinement, before Mr. Bynum loses his job and/or his good will with his employer.

11. AUSA Anthony Scarpelli has authorized counsel to represent that the government consents to defendant's requested modification of supervised release.[4]

WHEREFORE, for all the reasons set forth above, the defendant respectfully requests that the Court modify the terms of supervised release, substituting six (6) months of home confinement for the remainder of the scheduled community confinement.

                           Respectfully submitted,

                           /s/
                           Howard B. Katzoff (Bar No. 348292)
                           717 D Street, N.W.,   Suite 310
                           Washington, D.C.  20004
                           (202) 783-6414
                           Counsel for Daniel Bynum

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was serve via the Electronic Court Filing System (ECF) upon Anthony Scarpelli, Office of the United States Attorney, 555 Fourth Street, N.W., Washington, D.C.  20530, and by e-mail upon United States Probation Officer Stacy Funches, this   3rd    day of November, 2014.

                             /s/
                           Howard B. Katzoff

---

[4] Counsel is recommending 6 months because Mr. Bynum continued on home detention for an additional six (6) months after sentencing because the halfway house placement took much longer than expected.  Thus, in effect, Mr. Bynum will be serving about 12 months of home confinement, and a month and a half of community confinement -  rather than 12 months of community confinement.